## STEEN & MARSHALL vs. HARRIS.

1. Relatively to subsequent creditors of the purchaser, a conditional
   sale of chattels not duly recorded, is the same as an absolute sale.
2. When no part of the purchase money has been paid, a sale may be
   rescinded by mutual consent, though the purchase money notes
   have been transferred to a third person, provided the seller takes
   up the notes in consequence of the rescission, and either returns
   them to the maker or holds them subject to his order.
3. The rescission of a sale is complete as soon as the relation of debtor
   and creditor for the whole purchase money is dissolved, and this is
   accomplished when the purchaser holds the property for the seller,
   and the seller holds the notes for the purchaser.
4. An attachment against the purchaser, levied upon the goods after
   a complete rescission of the sale, is not effective against the title of
   the seller.

December 10, 1888.

Steen & Marshall *vs.* Harris.

Debtor and creditor.   Sales.   Rescission.   Vendor and purchaser.   Attachments.   Title.   Before Judge FAIN.   Catoosa superior court.   August term, 1887.

Reported in the decision.

R. J. McCAMY, for plaintiffs in error.

McCUTCHEN & SHUMATE, J. H. ANDERSON and W. H. PAYNE, *contra.*

BLECKLEY, Chief Justice.

On November 29th, 1886, Steen & Marshall, of Knoxville, Tenn., contracted to sell to Dr. Gardner, of Ringgold, Georgia, a piano, and delivered to him possession of the instrument.   The price was $325, for which four promissory notes were given by Gardner, payable to Steen & Marshall or order, one falling due at the end of each quarter during the succeeding twelve months.   It was expressed in these notes that title to the piano was retained by the sellers until full payment should be made, but the contract was not registered or recorded, as required by section 1955(a) of the code.   The notes were soon afterwards sold to Baldwin & Co., of Cincinnati, Ohio, and delivered to them, indorsed by the payees.   Shortly before the first one matured, Gardner wrote to Steen & Marshall, saying that he could not pay it promptly, but hoped to pay all the notes by the 29th of May, adding that he had written twice to Baldwin & Co. but had received no reply.   This led to a return of the first note for renewel by Gardner, and it was renewed by him on the first of March, the new note maturing sixty days after date.   Eight or ten days after this note reached them, and whilst it was still in their possession, Steen & Marshall received a letter from Gard-

ner proposing to rescind the contract of sale. They immediately replied, accepting the proposition, and authorizing him to hold the piano for them and to sell it if he could. At the same time, they wrote to Baldwin & Co. saying they would take up the notes, pay the discount, etc., which they did. The notes were taken up, put in a separate envelope, marked "Gardner's notes," and held subject to his order, and Steen & Marshall so wrote him to Florida, whither he had gone after making the offer of rescission. More than ten days after this last letter was written and sent, an attachment, at the instance of Harris, was levied upon the piano as Gardner's property. The debt on which the attachment was founded was contracted after the offer to rescind was accepted, and was not created on the faith of the property, Harris knowing nothing of the piano. A claim was interposed by Steen & Marshall, which has been twice tried, once in the primary and once in the appellate court, both trials resulting in favor of the claimants. Whether a new trial was properly granted by the latter court on the motion of the plaintiff in attachment, is now the question before us.

The only ground of the motion, besides the general ones was, that the jury found contrary to the charge of the court, the charge being that a mere agreement to rescind, unless the parties were in a condition to rescind, would not suffice, and that if Steen & Marshall had transferred the notes and did not control them, the contract was not rescinded.

1. As against Harris, the conditional element of the sale counts for nothing. No record of the contract having been made as the statute requires, the sale is to be treated as absolute so far as the rights of Harris are concerned. Code, §1935(a).

2, 3, 4. But on the facts in evidence, assuming the testimony of Marshall to be true, as the jury must have

believed, the rescission was complete, if not before the debt of Harris was created, certainly before the attachment was levied. That the notes were outstanding in the hands of Baldwin & Co. when the proposition to rescind was made and accepted, was no obstacle, for it was in the contemplation of both parties that the taking up of these notes was to be a part execution of the agreement to rescind. Gardner had information that the notes had passed into the hands of Baldwin & Co., and of course, when he offered to rescind he expected Steen & Marshall to take control of the notes and see that he did not have to pay them; and they did so. They at once proceeded, in execution of the agreement to rescind, to take up these notes, and they had accomplished it all and written to him that the notes were held subject to his order, before the attachment was levied. On this state of facts, it is manifest that the relation of debtor and creditor, whether between Gardner and Steen & Marshall, or between him and Baldwin & Co., was dissolved; and if at the time this attachment was levied, or at any time thereafter, an action had been brought upon any of the notes, or all of them, had they been mature, they could not have been collected. The rescission of the sale would have been a conclusive answer to any effort on the part of Steen & Marshall or of Baldwin & Co. to collect the amount of the notes, or to enforce them in any way against Gardner. So that the case at the time of the levy was simply this: Gardner had possession of the piano, holding it for Steen & Marshall; they had possession of the notes holding them for him; and the court's charge, if correct as abstract law, was not applicable to the proved facts of the case. The evidence warranted the verdict finding the property not subject, and the court erred in granting a new trial.

Judgment reversed.